**Wayne AMMER, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Civ. A. No. MJG–93–3795.**

United States District Court,
D. Maryland.

Sept. 20, 1994.

---

Stephen N. Goldberg, Cohn & Goldberg, Baltimore, MD, for plaintiff.

Judith Bollinger, Asst. U.S. Atty., Baltimore, MD, Richard T. Buckingham, Trial Atty., Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, DC, for defendant.

### MEMORANDUM AND ORDER

GARBIS, District Judge.

The Court has before it Defendant United States' Motion to Dismiss. The Court has considered the legal memoranda submitted by the parties and finds a hearing unnecessary to resolve the motion.

### I. INTRODUCTION

According to the Complaint, on May 25, 1991, Plaintiff Wayne Ammer ("Ammer") was allegedly operating a fishing vessel on the Pamlico Sound, in North Carolina, when he was thrown and injured by the wake of a passing U.S. Coast Guard ("USCG") cutter which was proceeding in a negligent manner. Some (unspecified) time after the accident, Ammer's counsel was provided with several copies of Standard Form 95 ("Form 95"), a claims form, by the Coast Guard. The Complaint does not state how his attorney procured the forms, whether he spoke with any legal representatives of the USCG or the United States, or whether any oral or written representations were made concerning his claim.

The back of Form 95 contains the statement that:

A CLAIM SHALL BE DEEMED TO BE PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT.... THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN *TWO YEARS* AFTER THE CLAIM ACCRUES.

The form also says:

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in item # 1 on the reverse side. *Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14.* Many agencies have published supplemental regulations also.

(emphasis added). Item 1 of the Forms supplied to Plaintiff's attorney contained the pre-printed address of a U.S. Coast Guard office in New York. The Form contained no reference to the Suits in Admiralty Act ("SAA") or the Public Vessels Act ("PVA").

Ammer's counsel proceeded to submit a completed Form 95 to the Coast Guard on May 13, 1993. Two weeks later, on May 28, 1993, Ammer received a letter from the Coast Guard denying his claim. The Coast Guard Attorney–Advisor's letter further advised Ammer that his claim was covered under the SAA and PVA, rather than the Federal Tort Claims Act ("FTCA"), that any subsequent action should be taken pursuant to those Acts, and that "the filing of this administrative claim has in no way tolled the requisite time period for bringing suit under the SAA or PVA."

Despite this information, and almost six months later, on November 15, 1993, Ammer filed this law suit against the United States for personal injury and property damage under the FTCA, or alternatively, the SAA and PVA. Defendant has filed a motion to dismiss for lack of subject matter jurisdiction, claiming (1) that Ammer's claim is not governed by the FTCA, but falls exclusively under the PVA, (2) that the PVA incorporates the two-year statute of limitations period provided in the SAA, and (3) that Ammer's claim, filed almost six months after the expiration of this period, is time-barred. In response, Plaintiff contends that Defendant should be equitably estopped from denying that the FTCA governs his case.

For reasons discussed below, the Court concludes that the Plaintiff's law suit must be dismissed. The Plaintiff has not alleged facts which, even if proven true, would entitle him to estop the Government from asserting its valid jurisdictional defense.

## II. *LEGAL STANDARD*

■ The burden a defendant must carry in order to prevail on a Motion to Dismiss is an onerous one. *See* Fed.R.Civ.P. 12(b). When evaluating a motion to dismiss a complaint, all well-pleaded allegations must be accepted as true and the pleading must be construed in a light most favorable to the plaintiff. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 at 296; § 1357 at 304 (1990). The court should not dismiss the claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Given this standard, to overcome Defendant's jurisdictional defense, Plaintiff must simply allege facts sufficient to justify invocation of the doctrines of equitable tolling or estoppel.

## III. *DISCUSSION*

### A. Jurisdiction

■ Suits against the sovereign require pleading a statute whereby the United States consents to be sued. *United States v. Clarke,* 33 U.S. (8 Pet.) 436, 443, 8 L.Ed. 1001 (1834). Moreover, "the terms of [the government's] consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941). Plaintiff alleges federal jurisdiction under the Federal Tort Claim Act (FTCA), the Suits in Admiralty Act (SAA), and the Public Vessels Act (PVA).

■ Although the FTCA usually provides a waiver of sovereign immunity in tort actions against the Government, the FTCA is expressly inapplicable where an admiralty claim exists.[1] 28 U.S.C. 2680(d). Admiralty claims against the United States are cognizable under the Suits in Admiralty Act, 46 App. U.S.C. 741–52, and the Public Vessels Act, 46 App. U.S.C. 781–90. These two statutes provide the exclusive source of remedies for maritime torts alleged against the Government. *Williams v. United States,* 711 F.2d 893 (9th Cir.1983); *T.J. Falgout Boats, Inc. v. United States,* 508 F.2d 855 (9th Cir.1974); *Bovell v. United States, Dept. of Defense,* 735 F.2d 755, 756 (3d Cir.1984), *Beeler v. United States,* 338 F.2d 687, 689 (3d Cir.1964). Given Plaintiff's alleged facts, his claim would be covered under the PVA, which allows suits against the United States for injuries caused by public vessels. 46 App. U.S.C. 781 et seq.

■ Suits brought under the PVA are subject to and proceed in accordance with the provisions of the SAA, insofar as these provisions are not inconsistent. 46 App. U.S.C. 782. For instance, actions brought under the PVA are subject to the SAA's two-year statute of limitations. *Bovell v. United States, Dept. of Defense,* 735 F.2d 755, 756 (3d Cir.1984). Moreover, the Supreme Court has construed the SAA statute of limitations as a jurisdictional prerequisite to the waiver of sovereign immunity. *McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951). *See also T.J. Falgout Boats, Inc. v. United States,* 508 F.2d 855, 858 (9th Cir.1974), *cert. denied,* 421 U.S. 1000, 95 S.Ct. 2398, 44 L.Ed.2d 667 (1975); *States Marine Corp. of Delaware v. United States,* 283 F.2d 776, 779 (2d Cir.1960).

■ The SAA statute of limitations begins to run from the date of injury. *McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951). As Plaintiff alleges that his injuries were caused by an accident on May 25, 1991, the limitations period for his claims would have expired no later than May 25, 1993. Consequently, Plaintiff's complaint against Defendant, filed almost six months after this date, would be time-barred and this Court would lack subject matter jurisdiction unless Plaintiff can demonstrate that the limitations period should be equitably tolled, or that the Government should be equitably estopped from raising a jurisdictional defense.

---

1. Specifically, the FTCA provides: "The provisions of this chapter and section 1346(b) of this title shall not apply to ... [a]ny claim for which a remedy is provided by sections 741–752, 781– 790 of Title 46, relating to claims or suits in admiralty against the United States." 28 U.S.C. 2680(d).

## B. Plaintiff's Contentions

Plaintiff asserts that he reasonably relied, to his detriment, on actions by the Government. He asserts that because the USCG provided his counsel with pre-addressed copies of Form 95 and that Form 95 mentions the FTCA but not the SSA or PVA, and that filing of an administrative claim is required before filing under the FTCA, the Government should not be able to induce a belief that the FTCA is applicable then claim Ammer had filed under the wrong act. In short, Ammer assets that the USCG misled him into believing that by filing the Form 95, "he would be complying with the applicable law . . . While the USCG may have had no obligation to give legal advice, including pre-printed claim forms with instructions, once it did so, it should be bound by its representations." Memorandum in Opposition to the United States' Motion to Dismiss, at 3–4. Alternatively, Ammer argues that the statute of limitations governing his claim should be equitably tolled because of the Coast Guard's misleading conduct. Finally, Ammer maintains that invocation of equitable principles is justified because the Government has not been prejudiced by the delay, as the USCG conducted an investigation immediately after the incident, and the United States was put on constructive notice by Ammer's timely administrative claim.

## C. Equitable Tolling and Estoppel

In *Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 234, 79 S.Ct. 760, 762, 3 L.Ed.2d 770, 773 (1959), the Supreme Court stated that:

> [W]here one party has by his representations or conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of that advantage.

In light of this general maxim, the Court held that despite the plaintiff's failure to file suit within the relevant limitations period, he would be entitled to have his case tried on the merits "*if he can prove that respondent's responsible agents, agents with some authority in the particular matter, conducted them-*selves *in such a way that petitioner was justifiably misled into a good-faith belief that he could begin his action at [a time beyond the statutory period].*" *Id.* at 235, 79 S.Ct. at 763, 3 L.Ed.2d at 773 (emphasis added).

Since the *Glus* decision in 1959, the Court has narrowly construed the availability of equitable doctrines in suits against the government. *See, e.g., United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (cautioning against extension of statutory limitations periods, especially in cases involving a waiver of sovereign immunity). Indeed, the Court has repeatedly declined to apply equitable estoppel based on a government employee's representations. *See Heckler v. Community Health Services of Crawford*, 467 U.S. 51, 67, 104 S.Ct. 2218, 2227, 81 L.Ed.2d 42 (1984) (holding plaintiff's reliance on oral representations of a unauthorized official, when existing regulations "should have and did" put her on ample notice of her legal rights, did not warrant equitable estoppel); *Schweiker v. Hansen*, 450 U.S. 785, 790, 101 S.Ct. 1468, 1471–72, 67 L.Ed.2d 685 (1981) (holding administrative agent's clearly erroneous legal representations fell "far short" of conduct which would justify estopping the government from insisting upon compliance with filing deadlines).

Nor has the Court allowed compassion for the plaintiff's lot or lack of cognizable harm to the government alone to justify application of equitable estoppel. Instead, it has firmly ruled that "[o]ne who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 155, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984).

> Although absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply *once a factor that might justify such tolling is identified,* it is not an independent basis for invoking the doctrine and sanctioning deviations from established procedures.

*Id.* (emphasis added). Stated simply: "Procedural requirements established by Congress for gaining access to the federal courts

are not to be disregarded by courts out of a vague sympathy for particular litigants." *Id.*

In *Irwin v. Veterans Affairs,* 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), the Supreme Court clarified its position on equitable tolling and estoppel in suits against the government. The Court began by reiterating that equitable doctrines may indeed be applied against the government in appropriate situations. *Id.* at 95, 111 S.Ct. at 457. Although any waiver of sovereign immunity must be "unequivocally expressed," the Court held that

> [o]nce Congress has made such a waiver, we think that making the rule of equitable tolling applicable to suits against the government in the same way that it is applicable to private suits, amounts to little, if any, broadening of the congressional waiver.... We therefore hold that the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States.

*Id.*

Yet, despite this holding that equitable doctrines **may** apply in suits against the government, the Court emphasized that:

> Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his *judicial remedies* by filing a defective pleading during the statutory period, or where the complainant *has been induced or tricked by his adversary's misconduct* into allowing the filing deadline to pass.
>
> We have generally been much less forgiving in receiving late filings *where the claimant failed to exercise due diligence in preserving his legal rights....* Because the time limits imposed by Congress in a suit against the Government involve a waiver of sovereign immunity, it is evident that no more favorable tolling doctrine may be employed against the Government than is employed in suits between private litigants.... *[Equitable principles] do not extend to what is at best a garden variety claim of excusable neglect.*

*Id.* at 89, 111 S.Ct. at 457–58 (footnotes and citations omitted) (emphasis added).

### D. Resolution of Issues

As noted above, Plaintiff contends that Defendant should be estopped from asserting its jurisdictional defenses because, by providing Plaintiff with pre-addressed copies of Form 95, the USCG supplied misleading information and induced Plaintiff into filing under the FTCA. Plaintiff also argues that the statute of limitations period for his claim should be equitably tolled based on his timely filing of an administrative claim with the USCG. Lastly, Plaintiff asserts that because the USCG conducted an investigation immediately following the incident and Defendant was put on constructive notice by the timely filing of an administrative claim, Defendant would not be prejudiced by the delay in filing. The Court will address each claim in turn.

▪ First, whereas the Supreme Court reaffirmed in *Irwin* that equitable doctrines may, in appropriate circumstances, preclude a limitations defense in suits against the government, Plaintiff has failed to allege facts that demonstrate anything other than the "garden variety" of neglect for which the Court expressly denied relief. To begin with, Plaintiff did not "actively pursue his judicial remedies by filing a defective pleading during the statutory period," *Irwin,* at 96, 111 S.Ct. at 458, but instead pursued an independent administrative remedy against the USCG, a Governmental agency. *See also Raziano v. United States,* 999 F.2d 1539 (11th Cir.1993).

Furthermore, Plaintiff has not alleged sufficient facts to support a finding that he was "induced or tricked by [the Defendant's] misconduct into allowing the filing deadline to pass." *Irwin,* 498 U.S. at 96, 111 S.Ct. at 458. *See also, Miller v. United States,* 803 F.Supp. 1120 (E.D.Va.1992). Indeed, the Fourth Circuit has insisted that a plaintiff allege instances of serious and affirmative government misconduct in order to warrant invocation of equitable principles. *See English v. Pabst Brewing Co.,* 828 F.2d 1047 (4th Cir.1987) (requiring evidence defendant wrongfully deceived or misled plaintiff in order to conceal the existence of a cause of

action or intentionally caused plaintiff to miss the filing deadline); *Zografov v. V.A. Medical Center*, 779 F.2d 967 (4th Cir.1985) (requiring, at very least, showing of affirmative government misconduct); *Price v. Litton Business Systems, Inc.*, 694 F.2d 963 (4th Cir.1982) (requiring deliberate design by defendant or actions defendant should unmistakenly have understood would cause plaintiff to delay filing); *Scheller v. Hydrotherm, Inc.*, 728 F.Supp. 377 (D.Md.1989) (requiring egregious wrongdoing or well-designed scheme on the part of defendant to prevent plaintiff's filing). Plaintiff has merely asserted that his lawyer was supplied by the USCG with a standard administrative claims form which happened indirectly to refer to the FTCA. Indeed, although Form 95 does direct a claimant where to look for further instructions *if that claimant is filing under the FTCA*, it does not assert that the form is to be used solely in FTCA claims or that unreferenced statutory remedies are not available. Similarly, by providing pre-addressed copies of an administrative claims form, the USCG merely supplied Plaintiff with forms necessary to pursue an administrative remedy. The USCG in no way impliedly represented that judicial remedies against the United States were not available. Significantly, Plaintiff has not asserted that any authorized representative of the United States Government made any sort of affirmative misrepresentations as to the applicable law or limitations periods governing his claim.

In short, Plaintiff fails to allege any evidence of affirmative misconduct by Defendant or its authorized agents that reasonably misled and induced Plaintiff not to file a timely claim under the SAA. Instead, Plaintiff's or Plaintiff's counsel's failure to adequately investigate the law and procedures necessary to file a maritime tort claim against the United States Government appears to illustrate an instance in which the claimant "failed to exercise due diligence in preserving his legal rights." *Irwin*, 498 U.S. at 96, 111 S.Ct. at 458.

Second, courts have consistently held that filing of an administrative claim does not toll the statute of limitations for a claim governed by the SAA or PVA. *See McMahon v. United States*, 342 U.S. at 27, 28, 72 S.Ct. at 19; *Bovell v. United States*, 735 F.2d 755, 756–57 (3rd Cir.1984); *Williams v. United States*, 711 F.2d 893 (9th Cir.1983); *States Marine Corp. of Delaware v. United States*, 283 F.2d 776, 779 (2d Cir.1960).

Finally, though it may be said that the United States has suffered no specific harm from the delay, as noted previously, lack of prejudice to a Defendant or mere sympathy for a plaintiff's predicament will not justify estopping the government from insisting upon compliance with legal regulations. *Baldwin County Welcome Center v. Brown, supra; see also Raziano v. United States*, 999 F.2d 1539 (11th Cir.1993) (declining to "extend equitable tolling to cover cases in which the government, because of pre-suit [administrative agency action], knew about a claim that might be pursued against it in court"); *Justice v. United States*, 6 F.3d 1474, 1479–80 (11th Cir.1993); *Williams v. United States*, 711 F.2d 893, 898 (9th Cir. 1983) (refusing to impute knowledge of a government agency to the U.S. Attorney or U.S. Attorney general for claim originally filed against FAA, but amended, after statute of limitations had expired, to name United States as defendant).

## IV. CONCLUSION

Plaintiff alleges facts supporting a claim governed exclusively by the PVA, and explicitly not covered by the FTCA. The PVA incorporates the two-year statute of limitation provided by the SAA. Plaintiff's November 15, 1993 filing against the United States was almost six months late. Therefore, Plaintiff's claim against the Defendant is time-barred and this Court lacks subject matter jurisdiction to try the case on the merits. Furthermore, Plaintiff has failed to allege facts which could support a finding of affirmative government misconduct or inducement to warrant invocation of equitable doctrines and preclusion of a jurisdictional defense.

For the foregoing reasons:

1. The Motion To Dismiss filed by Defendant United States is **GRANTED.**

2. Judgment shall be entered by separate Order.

**SO ORDERED.**